The order appealed from is correct, and it should be affirmed.

[ERIE GENERAL TERM, May 6, 1867. *Marvin, Davis* and *Daniels,* Justices.]

———————•◦•———————

THE CANASTOTA AND MORRISVILLE PLANK ROAD COMPANY *vs.* PARKILL.

50  601
86h 464

The rule that a plaintiff is in any event entitled to recover the amount tendered and brought into court by the defendant, does not apply to an action brought to recover a penalty, of a fixed amount, and that alone. In such an action, unless the plaintiff recovers the amount of the penalty, he is not entitled to any judgment.

In an action upon a penal statute, although the defendant can claim that he is not liable to the penalty which the statute imposes unless, upon a strict construction, his act comes within the letter of the statute and is expressly made subject to the penalty; yet where the statute was intended to remedy an existing evil, to protect road corporations from fraudulent and dishonest attempts to use their roads and avoid the payment of the tolls, upon well settled rules of construction it is enough that the act done is one of the mischiefs sought to be prevented. To extend the penalty to such an act does no violence to the language of the statute, and is according to the intention of the legislature.

Where the defendant, after traveling several miles upon the plaintiffs' road, when close to its toll-gate, instead of continuing on the road a distance of about eighty-two rods to his house, turned off from the road and went, with his teams, a distance of about one hundred and twenty rods, through the fields, where there was no wagon road, to his barn, near the plaintiffs' road; and though himself a witness, no attempt was made to show that he had any object in so leaving the road other than to avoid the payment of toll; *Held,*

that his intention to avoid the payment of tolls was clear; and that it could make no difference that while so off the plaintiffs' road he was on his own land.

And though it was not proved, in terms, whether, after such passing around the gate, the defendant ever entered on the plaintiffs' road, yet it did appear that he was a farmer; that his house and barn were close to the plaintiffs' road; that there was no other road leading across, or to, or from that road, any where in the vicinity of his house. *Held* that he must be deemed to have "again entered on such road," within the meaning of the statute, (1 *R. S.* 588, § 55,) though the time when he did so enter, did not affirmatively appear.

*Held, also,* that the act of the defendant in so leaving the plaintiffs' road near the toll-gate, and again entering upon it, was designed to defraud the plaintiffs of the tolls to which they were legally entitled; and that he thereby made himself liable to the penalty prescribed by the 55th section of the statute.

So much of section 2, chapter 360 of the laws of 1848, as allowed persons living within one mile of a gate, to pass through the gate for half toll, when transporting the property of others, was repealed by the act of 1851, (*Laws of* 1851, *ch.* 107;) and these provisions of the act of 1851 are still in force. Consequently, the persons exempted from the payment of more than half toll, by the act of 1848, are now liable to pay full toll.

The legislature of 1855, in amending the act of 1848, intended only to declare that it should have the same effect as it had before the amendment so made by it, except as they expressly declared.

APPEAL by the plaintiffs from a judgment of the county court of Madison county, affirming a judgment rendered in favor of the defendant, in a justice's court.

The plaintiffs, in the year 1865, sued the defendant before a justice of the peace of Madison county, to recover four penalties of $10 each. Two of them being for passing around the plaintiffs' gate on land adjacent thereto, to avoid the payment of legal toll, and two of them for passing through the plaintiffs' gate without paying the legal toll. On the trial it appeared that the defendant resided from 80 to 90 rods northerly of the toll gate of the plaintiffs on the line of the plank road on the easterly side thereof, between the said gate and the village of Canastota, and that his farm extended from his house southerly along the line of the plank road to a point southerly of the toll gate. That the defendant had been employed to transport a quantity of lumber from Canastota to Morrisville (which was several miles southerly from

Canastota and Morrisville Plank Road Company *v.* Parkill.

the gate) by one Atkins, who owned the lumber. And that before the time in question the defendant had drawn the lumber from Canastota as far as his house and stored it in his barn. That on the 10th day of April, 1865, he loaded two teams with the lumber and started on the plaintiffs' road for Morrisville, and when he arrived at the gate, the gate keeper demanded eight cents for toll, for each team, which was the full toll for persons not exempt, which the defendant refused to pay ; but offered and tendered four cents for each team, which it was admitted was one half of the legal toll for persons not exempt, and that the defendant passed through the gate with his teams without paying toll, and proceeded on to Morrisville with his lumber.

It also appeared that on his return from Morrisville, and when he arrived at the gate in question, he turned off to the east on his own land, with both of his teams, and went around, and past, the gate and proceeded to his barn which was near to his house, and also to the plaintiffs' road. That there was no fence between the road and the defendant's land where he turned off, and no road or wagon path where he went after leaving the plank road.

That the distance from the gate to his house, traveled by him after leaving the road, was about once and a half as far as by the road. And that there was no road in the vicinity of the defendant's house crossing, or leading to and from, the plaintiffs' road. The defendant brought the eight cents tendered, into court. The justice rendered judgment for the defendant for costs, which was affirmed by the county court, with costs of the appeal.

*B. F. Chapman,* for the appellant.

*D. Pratt,* for the respondent.

*By the Court,* FOSTER, J. The plaintiffs claim that in any event they were entitled to recover the amount tendered

and brought into court ; and that therefore the judgment is erroneous. This would unquestionably be so in an action for any ordinary claim, but I think the rule relied on does not apply to this case.

The action is for a penalty of a fixed amount, and for that alone ; and unless the plaintiffs recover that, they are not entitled to any judgment ; and the object of making and proving the tender, was only to establish that the plaintiffs are not entitled to any thing, in the kind of action which they have brought. It may well be if the plaintiffs are defeated in this action, that they will be entitled to the amount tendered, in an action to recover the toll for passing the gate ; and in such an action the defendant would be estopped by the tender from sitting up that no toll was due. But not so here. The plaintiffs must recover a full penalty or nothing.

2. The next question is, did the defendant subject himself to the penalty prescribed by section 55, title 2, of chapter 18, part 1, of the Revised Statutes, (1 *R. S.* 588, § 55,) and which, by section 2 of chapter 71, of the Laws of 1850, (*Laws of* 1850, *p.* 79, § 2,) is made applicable to plank road companies, by turning off from the plank road and proceeding to his barn with his teams as he did on his return from Morrisville.

As a penal statute, merely, the defendant could claim that he is not liable to the penalty which it imposes unless, upon a strict construction, his act comes within the letter of the statute and is expressly made subject to the penalty ; but the statute in question was intended to remedy an existing evil, to protect road corporations from fraudulent and dishonest attempts to use their roads, and avoid the payments of the tolls, which were justly due for such use ; and upon well settled rules of construction it is enough that the act done is one of the mischiefs sought to be prevented. That to extend the penalty to it does no violence to the language of the statute ; and is according to the intention of the legislature.

The section in question has already received such liberal

construction by this court in the case of the *Dansville and Wayland Plank Road Company* v. *Hull*, (27 *Barb.* 509,) where it was held that a person who, after traveling on the plank road with his team about one hundred rods, did, for the purpose of avoiding the payment of toll, turn out of the road at a point one mile and twenty rods from the toll gate, and traveled on another public road one hundred and eighty rods beyond the toll gate and there entered again upon the plank road and traveled three or four miles, was guilty of turning out of the plank road "*on ground adjacent to the toll gate.*" And the same liberal construction was given to a kindred statute, imposing a penalty for turning off a turnpike road to avoid the payment of toll, in the case of *Carrier* v. *The Schoharie Turnpike Company*, (18 *John.* 56,) where it was held that the words "*on ground adjacent to the gate*" extended to a turning off at more than half a mile distant therefrom, and that the words "turning out on ground adjacent" included a turning out upon a public highway leading from the turnpike.

The section in question is as follows : " Every person who, to avoid the payment of legal toll, shall with his team, carriage or horse, turn out of a turnpike road, or pass any gate thereon on ground adjacent thereto, and again enter on such road, shall for each offense forfeit the sum of five dollars to the corporation injured."

That the defendant, after traveling several miles upon the plaintiffs' road, and when close to their toll gate, turned off from it, and proceeded with his teams, through the fields to his barn, which was close to the plaintiffs' road, is beyond dispute ; and the only open questions as to this point are whether he did so to avoid the payment of the legal toll, and whether he again entered on such road.

The defendant was himself a witness, before the justice in his own behalf, and no attempt was made to show that he had any object in so leaving the road other than to avoid the payment of toll. Indeed the circumstances lead necessarily

to the conclusion that his only object was to avoid such payment. If that was not his object, he could have stated why it was that instead of continuing on the road a distance of about eighty-two rods to his house, he went through the lots a distance of about one hundred and twenty rods, and where there was no wagon road ; and it does not appear that he had any business, which called him to do so. I think his intention to avoid the payment of the toll was clear. And it can make no difference, that while so off the plank road, he was on his own land.

The penalty is not given because the party subject to it is where he had no right to be, independent of the statute ; nor is the statute to be restricted to such cases.

A party, but for the section in question, has as much legal right as against the plank road company, to turn off the plank road on the ground of another person as upon his own. And although in such case, he might be liable to the owner for trespass, the plank road would have no more right to recover the penalty, than if he turned off on his own land. The statute is aimed at the offense of turning out to avoid the payment of toll ; and attaches as well when it is done upon the land of the defendant as upon the land of another, or upon a highway. The remaining question upon this branch of the case, therefore, is, whether the defendant within the meaning of the section in question " *again enter-ed on such road.*" It is not proved, in terms, whether after such passing round the gate, he ever entered on the plaintiffs' road ; but it does appear that he was a farmer. That his house and barn were close to the plaintiffs' road. That there was no other road leading across, or to, or from, that road any where in the vicinity of his house. He must, therefore, have entered again upon that road, though the time when he did so does not affirmatively appear.

Suppose, that instead of passing off upon his own land, and stopping that night at his own house, he had left by a public highway and had stopped over night at some place off

the road ; and had then passed on to the plaintiffs' road again beyond the gate in question, would he not be liable for the penalty ? Or, suppose, that being engaged, as he was, in drawing 41,000 feet of lumber from Canastota to Morrisville he had, at each trip, drawn the lumber from Canastota to Morrisville over the plaintiffs' road, and at each time he had returned on the road and turned off as he did on the occasion in question, staid at home over night, and the next morning started for Canastota for another load ; could any one doubt that he *entered upon the road again,* within the meaning of the statute in question.

It is manifest to me that the act of the defendant was designed to defraud the plaintiffs of the tolls to which they were legally entitled ; and that the defendant made himself liable to the penalty prescribed by the section in question.

3. The remaining question is whether the defendant, when he passed the gate with his teams on his way to Morrisville and tendered four cents for each team (being one half of the legal tolls for teams not exempt,) was liable for the penalty imposed by section 3 of chapter 485 of the Laws of 1855, "for the passing of a plank road gate without paying the toll required by law and with intent to avoid the payment thereof."

If the defendant living, as he did, within one mile of the gate, and being engaged in transporting the property of others, was bound to pay only half toll, then he is not liable. But if he was subject to the payment of full toll, he was liable ; and the determination of the question depends upon the consideration of several statutes applicable to the plank road in question. The second section of chapter 360 of the Laws of 1848, enacted that "any company formed under this act may take half the rate of toll, and no more, provided for in said act, from persons living within one mile of the gate at the which it is taken ; but no tolls shall be taken from farmers going to and from their work on their farms." And there can be no doubt that while the *whole* of that sec-

tion remained in force, all persons living within one mile of a gate were liable only to the payment of half toll when engaged in transporting the property of others.

The Laws of 1851, chapter 107, or so much as applies to the question, is as follows : "Section 1. The following persons, and no others, shall be exempt from the payment of tolls at the gates of the several companies formed under the act entitled an act, &c." and that act included six classes of persons under six subdivisions, the fifth of which declared that "persons living within one mile of any gate, by the most usually traveled road, should be permitted to pass the same at one half the usual rate of toll, *when not engaged in the transportation of other persons or the property of other persons."* Subdivision 6 provided "that farmers living on their farms within one mile of the gate, by the most usual traveled road, should be permitted to pass the same, free of toll, when going to and from their work on said farms ;" and section 3, in terms, *repealed* "any thing contained in the act of May 7th, 1847, or in any subsequent act which is inconsistent with the provisions of this act."

So much, therefore, of section 2, chapter 360 of the Laws of 1848, as allowed persons living within one mile of a gate, to pass through the same for half toll, when transporting the property of others, was repealed by the act of 1851, as well because that exemption was clearly repugnant to the provisions of subdivion 5, of the last mentioned act, as because of the express repeal by the act of 1851 of all prior provisions inconsistent with its enactments. And if the before mentioned provisions of the act of 1851, are still in force, the defendant was liable to pay full toll, when he passed the gate.

It is claimed on the part of the respondent that section 4, of chapter 540, of the Laws of 1855, has virtually, though not expressly (as there is no repealing clause in that act) repealed those provisions of the act of 1851.

The section of the act of 1855, so relied upon, is as follows :

" *Section* 4, section 2d of chapter 360, of the Session Laws of 1848, is hereby amended so as to read as follows : Any company formed under the said act may take half the rates of toll, and no more, provided for in said act, from persons living within one mile of the gate at which it is taken, except persons residing in a city or incorporated village, who shall pay full toll ; but no toll shall be taken from farmers going to and from their work on their farms on which they reside, or from persons driving or leading animals to or from the pasture or field where they are usually kept."

The object of section 4, so far as it is to be ascertained from its express language, was most beneficial to plank road companies. Prior to its enactment, persons residing in cities and incorporated villages, if within one mile of a gate, were entitled to the same exemption from toll, as persons residing elsewhere. And by the express language of the section in question, they were excepted from the exemption unless engaged in driving or leading animals to and from the pasture or field in which they were usually kept. It also clearly intended to give to farmers the same exemption ; and in doing so to remove all doubt of their right to such exemption, which previously existed under subdivision 6 of the act of 1851, which gave them the exemption only " when going to and from their work on their farms."

Whether, however, the legislature also intended to restore the privilege of *all* persons living within one mile of a gate, to transport through it the persons or property of others, on the payment of only half toll, and to repeal so much of subdivision 5 of section 1 of chapter 107 of the Laws of 1851, as had taken away that right, must be ascertained by a reference to the whole act, to the circumstances under which it was passed, and by the application to the case, of the rules of construction which have been adopted by the courts.

Without stating the various provisions of the act, it is entirely clear, as will be seen by reference to it, that as a

whole, it was intended to be highly beneficial to plank road companies ; and the clause excepting from any exemption all persons living within cities, and incorporated villages, unless engaged in leading or driving animals to, &c. is of that character.

Of course, where there is clear repugnancy or express repeal, no room is left for inquiry into the intent of the legislature. But such is not this case. When the act of 1855 was passed, the second section of chapter 360 of the Laws of 1848, contained no provision which related to the case of persons living within one mile of a gate and who were engaged in transporting the persons or property of others. · That question had been withdrawn from that section. So much as included it had been repealed ; and every thing relating to it wholly included in, and disposed of by the fifth subdivision of section 1 of chapter 107 of the Laws of 1851. And yet none of the *language* of the act of 1848 had been repealed, while the future application of its general language to the case of such persons, was forbidden and was at an end.

It still, however, covered the case of all *other* persons living within one mile of the gate ; and as such, was clearly the subject of *amendment* by subsequent legislation.

It is proper to assume that the legislature, when they passed the act of 1855, knew that the act of 1848 had nothing to do with the case of persons transporting the persons or property of others ; and that that whole subject was controlled and provided for by the act of 1851. Why, then, did they not, when amending the section in question of the law of 1848 declare that so much of the act of 1851, as was inconsistent with the amendment, was repealed. It seems to me that the whole question might well rest upon and be decided against the repeal by that fact alone. But, again, as before stated, the *language* of the act of 1848 was not repealed by the act of 1851. It remained the same as before the passage of that act, though the application of that language was restricted to the case of persons not transporting the persons or

Canastota and Morrisville Plank Road Company *v.* Parkill.

property of others.    And this the legislature of 1855, we are to *presume,* were of.

.They knew that the general language of that section did not include such persons.    And what did they do ?    Did they say that the language of that section should thereafter include the persons who, by the act of 1851, were excluded from its operation ?    They did not.    But with the knowledge that it did not embrace such persons in amending it, so as to exclude persons living in cities and villages, (except when driving or leading animals, &c.) and so as to include others while doing so, they merely declared that its language shall be the same as it then was, except as to persons living in cities and villages and others when driving or leading animals, &c. Now by simply declaring in the law of 1855, that the section in question of the law of 1848 should continue to read as it did before, except as to the two subjects before referred to, how can it be said that they gave a more extended scope to that portion of it which they did not alter, than it before had.

It seems to me that simply declaring that it should read as it did before, did not in any way show an intention to give it any farther reaching operation, in that respect, than it had before it was so amended ; and that the legislature of 1855 intended only to declare that it should have the same effect as it had before the amendment so made by it, except as they expressly declared.

I am, therefore, of the opinion that the judgment of the county court and of the justice should be reversed, with costs.

Both judgments reversed.

[Onondaga General Term, June 26, 1866. *Bacon, Foster* and *Mullin,* Justices.]